# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **Adoption of I.J.E. and T.M.E.**

**No. 17-1133** (Nicholas County 17-A-21)

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner J.E.E., by counsel Harley E. Stollings, appeals the Circuit Court of Nicholas County's October 18, 2017, order finding that he abandoned children I.J.E. and T.M.E.[1] Respondent R.M., by counsel Nigel E. Jeffries, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in making certain factual findings, failing to consider certain facts, and finding that he abandoned the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of these proceedings, petitioner, the biological father of the children at issue, and the children's mother were married. The marriage resulted in the birth of both children at issue. In November of 2011, petitioner and the children's mother were divorced by order of the Family Court of Clay County. According to the parties, the family court ordered that petitioner was to have no contact with the children until he completed the following services: (1) Batterer's Intervention Prevention Program ("BIPPS"); (2) individualized parenting education; and (3) adult life skills education.[2] The family court further ordered petitioner to pay monthly

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The sparse record in this matter contains only (1) the docket sheet for the underlying proceedings, (2) the order on appeal, (3) petitioner's petition to modify the parenting plan and child support obligation, and (4) petitioner's financial statement. The record does not contain any of the orders from the family court concerning the parties' divorce, the subsequent parenting plan, or the order denying petitioner's motion for modification. As such, the statement of facts in this memorandum decision is based, in part, upon the parties' representations.

1

child support. Following the divorce, the mother remarried in December of 2011. She and the children have resided with the stepfather, respondent herein, since that time.

In April of 2016, petitioner filed a motion to modify the parenting plan and child support in an effort to exercise visitation with the children. According to respondent, the family court denied this motion on the basis that petitioner failed to comply with the services previously ordered. Accordingly, the family court found that it was in the children's best interests to have no contact with petitioner until such time as he complied with those services.

Petitioner was incarcerated for a burglary conviction in February of 2017 and remained incarcerated throughout the underlying proceedings.[3] As a result of his incarceration, petitioner's monthly child support obligation was reduced to zero. In August of 2017, the children's mother and stepfather filed a petition for adoption in the Circuit Court of Nicholas County in which they alleged that petitioner abandoned the children. In October of 2017, the circuit court held a hearing on the contested adoption. Ultimately, the circuit court found that petitioner abandoned the children. It is from this order that petitioner appeals.

This Court has previously established the following standard of review:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 1, In re the Adoption of Jon L., 218 W.Va. 489, 625 S.E.2d 251 (2005).

Syl. Pt. 1, *Joshua D.R. v. David A.M.*, 231 W.Va. 545, 746 S.E.2d 536 (2013) (quoting Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997)). Upon our review, we find no error in the proceedings below.

First, petitioner alleges that the circuit court erred in finding that "[w]hile [petitioner] avers that he did not know the children's address, it is apparent that he made little to no effort to ascertain it." Before this Court, petitioner fails to outline what steps he took to obtain the children's address so that he could contact them or otherwise show that the circuit court's order in this regard is contrary to the evidence. In short, petitioner wholly fails to provide any argument that he did, in fact, attempt to obtain the children's address. Instead, petitioner argues that he was "making progress toward reestablishing parenting privileges at the time of the filing of the adoption petition[,]" as evidenced by his alleged participation in previously ordered services. Because petitioner does not provide any argument to show that the circuit court erred in finding that he made little to no effort to ascertain the children's address, we find that he is not

---

[3]Petitioner asserts, without any evidence to support his claim, that he was incarcerated as early as May of 2016. However, he also alternately asserts at multiple points in his brief that he was incarcerated in May of 2017. The circuit court's order on appeal, however, indicates that "[petitioner] has been incarcerated upon a conviction of burglary since February 9, 2017. . . ."

entitled to relief in this regard. However, to the extent that petitioner is arguing that his alleged compliance with the required services was in furtherance of contacting the children and, thus, renders the circuit court's finding erroneous, we similarly find no error.

Petitioner acknowledges that the family court's prior order barred him from contacting the children until such time as he completed the BIPPS program, parenting education, and adult life skills education. According to petitioner, his prior "petition seeking visitation alleged, among other things, 'I have also taken my parenting class.'" He goes on to assert that he "testified during the adoption hearing that he had taken the BIPPS class in Randolph County." However, on appeal to this Court, petitioner provides no evidence to corroborate his self-serving assertions that he completed these two requirements. Moreover, petitioner acknowledges that he did not complete all of the services required of him, as he asserts that "the parenting skills class required of him was not available in prison." Regardless of whether this service was unavailable due to his incarceration, petitioner makes no effort to explain why he did not complete the service at any point between November of 2011, when the family court ordered he do so, and his incarceration in February of 2017. Simply put, the record is clear that petitioner did not undertake the steps necessary to contact his children. Accordingly, we find no error in the circuit court's finding that he made no effort to contact the children, regardless of whether that finding was based on petitioner's admitted failure to obtain the children's address or undertake the services necessary to contact the children in accordance with the family court's prior order.

Next, petitioner argues that the circuit court refused to note that he "was incarcerated from May 9, 2017, through the present. . . ." As noted above, petitioner's brief contains at least two different dates upon which he alleges that his incarceration began and none of his assertions are supported by any evidence. Regardless of the date of his incarceration, petitioner's argument is predicated on the circuit court's failure to recognize that he was incarcerated during the proceedings and, thus, unable to visit the children. We do not agree, as the circuit court's order specifically indicates that petitioner "has been incarcerated upon a conviction of burglary since February 9, 2017. . . ." As such, it is clear that the circuit court recognized that petitioner was incarcerated during the proceedings and that his incarceration resulted in a restriction on his travel. The order on appeal shows that the circuit court appropriately acknowledged petitioner's incarceration and considered the same in reaching its decision. As such, petitioner is entitled to no relief in this regard.

Finally, the Court finds no error in the circuit court's finding that petitioner abandoned the children or its finding that petitioner failed to establish compelling circumstances to rebut the presumption of abandonment. In support of this assignment of error, petitioner argues that he was incarcerated for the entirety of the adoption proceedings and his incarceration denied him the opportunity to communicate, visit, or support the children. Specifically, petitioner argues that an incarcerated parent is unable to pay child support; claims that the circuit court penalized him for seeking to have his child support obligation reduced to zero while incarcerated; and asserts that he was "doing what he could to have his parenting privileges restored." The Court, however, finds that petitioner's arguments in support of this issue misstate the facts of the case and the relevant legal authority.

Pursuant to West Virginia Code § 48-22-306(a),

3

[a]bandonment of a child over the age of six months shall be presumed when the birth parent: (1) Fails to financially support the child within the means of the birth parent; and (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: *Provided*, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

Moreover, West Virginia Code § 48-22-306(d) provides that

[n]otwithstanding any provision in this section to the contrary, any birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child: *Provided*, That in no event may incarceration provide such a compelling circumstance if the crime resulting in the incarceration involved a rape in which the child was conceived.

According to petitioner, he established compelling circumstances for his failure to contact the children and provide support because of his incarceration. We do not agree.

First, this Court has held that "incarceration does not relieve a parent of the duty to provide financial support for his/her child." *In re Adoption of C.R.*, 233 W.Va. 385, 758 S.E.2d 589 (2014). Moreover, it is clear that petitioner failed to pay child support as ordered prior to his incarceration. While petitioner asserts that he paid child support prior to his incarceration, he provides no evidence in support of this assertion. On the contrary, the evidence below showed that petitioner failed to pay his child support prior to incarceration. Specifically, the circuit court noted that, as of August of 2017, petitioner "owed back child support in the amount of $24,314.18." Further, the circuit court found that "[a]s a result of his incarceration [petitioner's] child support obligation was decreased to zero dollars per month while he is incarcerated. . . ." Given that his child support obligation was reduced to zero, it is clear that petitioner failed to pay his child support as ordered prior to incarceration, as evidenced by his arrearages. Thus, this element of abandonment is satisfied, especially in light of petitioner's failure to establish compelling circumstances to rebut the same.

Additionally, in finding that petitioner abandoned the children, the circuit court specifically found that he "has not had contact with the children since 2013." While it is true that he was initially precluded from contacting the children by the family court's order barring contact until such time as he completed the required services, we find that this does not constitute a compelling circumstance to rebut the presumption of abandonment, especially given petitioner's willful refusal to complete those services for a period of several years. *See Id*. at 391, 758 S.E.2d at 595 (holding that although restrictions on a father's contact with his child as imposed by the terms of supervised release and a final divorce decree "may have prevented him from visiting his child in the first instance, . . . [the] Father's failure to request that these conditions be lifted precludes him from claiming that there exist 'compelling circumstances' to

4

justify his failure to visit or otherwise communicate with his child"). Petitioner argues that he petitioned the family court for a modification of the parenting plan such that he could exercise visitation with the children, but we find that this was a hollow request given his admitted failure to comply with the necessary services. As such, we find that petitioner failed to establish compelling circumstances to rebut the presumption of abandonment, and that the circuit court's finding that petitioner abandoned the children was not in error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 19, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.